**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **IN RE:** | : | **CHAPTER 11 (SUBCHAPTER V)** |
| **Precision Trades & Services, LLC** | : | |
| **Debtors** | : | **CASE NO. 26-00174-HWV** |
| | : | |

**PLAN OF REORGANIZATION**
**UNDER SUBCHAPTER V OF CHAPTER 11**

**Precision Trades & Services, LLC ("Precision") proposes the following Plan of Reorganization (the "Plan") dated April 22, 2026 with respect to its Chapter 11 case:**

## I:  Definitions

Set forth below are various terms which shall, except where the context otherwise requires, have the respective meanings listed herein. All of the following meanings shall be applicable to the singular and plural forms of the following defined terms:

1.1.    Accounts Receivable shall mean sums owed to the Debtor for charges on account of the Debtor providing services.

1.2.    Administrative Claim shall mean an administrative expense from and after January 22, 2026, the date on which the Debtor's Chapter 11 Case commenced, which is entitled to priority in accordance with Section 507(a)(1) of the Code and allowed under Section 503 of the Code.

1.3.    Administrative Professional Claim shall mean compensation and reimbursement of professionals, including attorneys, accountants, experts, consultants and realtors as allowed by the Court under Section 330 of the Code.

1.4.    Allowed Claim shall mean a Claim which is scheduled pursuant to the Code, or stipulated of record in this Chapter 11 Case, other than a Claim scheduled as disputed, contingent or unliquidated, or which is identified in a Court approved Stipulation or Order, filed of record in this Chapter 11 Case, or which has been filed pursuant to Section 502(a) of the Code, and with respect to which no objection to the allowance thereof has been interposed within the time allowed by the Court or Bankruptcy Code, or as to which any objection has been overruled (and to the extent so overruled) by a Final Order. An Allowed Claim shall not include any interest accruing on a Claim except as specifically authorized by the Plan.

1.5.    Assets shall mean the Debtor's Property and Vehicles.

Case 1:26-bk-00174-HWV   Doc 60   Filed 04/22/26   Entered 04/22/26 16:15:58   Desc
Main Document     Page 1 of 19

1.6.     F&M Trust Company, shall mean an entity known as "F&M Trust" which is a secured creditor of the Debtor.

1.7.     Cash shall mean cash and cash equivalents.

1.8.     Cash Collateral Motion shall mean that Motion filed by the Debtor on March 4, 2026.

1.9.     Cash Collateral Order shall mean the Order initially entered by the Bankruptcy Court on March 30, 2026, and as continued by the Court.

1.10.    Chapter 11 Case shall mean the proceeding commenced by voluntary petition under Chapter 11 of the Code at Case No. 26-00174, in the United States Bankruptcy Court for the Middle District of Pennsylvania.

1.11.    Claim shall have the meaning as provided by Section 101(4) of the Code.

1.12.    Code or Bankruptcy Code shall mean the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. Sections 101, et seq., commonly referred to as the Bankruptcy Code.

1.13.    Contingent Claim shall mean any Claim for which the Debtor is not directly liable, is listed as contingent on the Schedules, and has not been determined otherwise by a Final Order.

1.14.    Court or Bankruptcy Court shall mean the United States Bankruptcy Court for the Middle District of Pennsylvania in which Court the Debtor's Chapter 11 case is pending.

1.15.    Debtor shall mean Precision Trades & Services, LLC, the Debtor in the above-Chapter 11 case.

1.16.    Disputed Claim shall mean any Claim which is listed as disputed on the Schedules, or to which an objection to the allowance thereof has been interposed, and has not been determined otherwise by a Final Order.

1.17.    Effective Date shall mean the Effective Date of the Plan which date shall be the first day of the month following thirty (30) days after the Confirmation Order becomes final, and shall not have been reversed, stayed, or adversely modified or amended. The Effective Date is as further set forth in Section 8.02 of the Plan. Such date is subject to the right of the Debtor to request an extension of such date.

1.18.    Final Order shall mean an Order of the Bankruptcy Court which has not been reversed or stayed and to which:
> a. The time to appeal or seek review, rehearing or certiorari has expired and no timely appeal has been filed, or
> b. Any appeal has been finally resolved.

2

1.19　Personal Property shall mean the Debtor's present and future accounts receivable, chattel paper, securities, partnership interests, documents, equipment, furniture, general intangibles, inventory, if any, and all products and proceeds thereof.

1.23.　Petition Date shall mean January 22, 2026.

1.24.　Plan means this Plan, and as it may be modified or amended, as is applicable.

1.25.　Priority Claim shall mean a Claim, other than an Administrative Claim or Tax Claim, as to which priority in payment is asserted pursuant to Section 507(a) of the Code.

1.26.　Pro Rata shall mean the same proportion that a Claim in a particular class bears to the aggregate amount of all allowed Claims in such Class.

1.27.　Subchapter V Trustee shall mean Lisa Rynard, Esquire, or any substitute, as appointed by the Office of the U.S. Trustee.

1.28.　Any term which is used in this Plan which is not defined herein, but is used in the Bankruptcy Code or found in the Bankruptcy Code, has the meaning assigned to it in the Code

## II. Brief History of the Business Operations of Debtors

## 2(a)　Statement of Jacob Plank

I am the co-owner of Precision Trades & Services, a construction and renovation company specializing in residential and commercial exterior and interior improvements, including roofing, siding, and general renovations. I have dedicated my professional career to the trades industry, with a focus on operations, customer service, and business development.

My experience began in hands-on field work working for my family's company, where I developed a deep understanding of construction practices, job site management, safety procedures, and quality of work. Over time, I transitioned into leadership and ownership responsibilities as my dad was on his way to retirement. Where my role expanded to include project oversight, client relations, financial management, and long-term strategic planning. After my dad decided to not retire and wanted to stay in the business. I decided to leave his company and partner with two guys and start our own company. One being based out of Pennsylvania and also having an office in Melbourne Florida.

As a co-owner, I have been actively involved in the day-to-day and long-term operations of the company. My responsibilities include overseeing projects, managing employees and subcontractors, maintaining vendor relationships, ensuring customer satisfaction, and working to sustain the financial health and growth of the business. In the beginning of our company, our ex partner was the one who controlled the office and the finances coming in and out of our business. Once we caught him embezzling I had taken on almost all of the office and financial roles within the company.

Throughout my career, I have worked diligently to build and operate a legitimate, reputable business, maintain strong relationships with customers and vendors, and uphold my obligations to employees, creditors, and the community.

3

## 2(b)   Brief History of the Company

Precision Trades & Services was founded to provide high-quality construction and renovation services with a focus on professionalism, craftsmanship, and customer satisfaction. The company primarily performs roofing, exterior renovations, and interior renovations for residential and commercial clients.

Since its founding, the company has completed hundreds of projects and developed a reputation for quality work and strong customer relationships. The business has employed and subbed out skilled workers, supported local vendors and suppliers, and contributed to the local economy. The company in both territories is a 5 star google company and an A+ company with the BBB.

Prior to the financial difficulties described below, the company operated successfully and maintained steady operations. The business generated consistent revenue and maintained ongoing projects and customer demand. It wasn't until we went through a very large embezzlement that we went into financial difficulties trying to keep caught up with the debt we were put in and new projects. The company's mission has always been to provide quality services while operating responsibly and maintaining long-term sustainability.

## 2(c)   Explanation of How and Why the Company Came to Financial Problems

The company's financial difficulties were primarily caused by the actions of a former business partner who embezzled funds from the company without my or Jon's knowledge or authorization. He had also created us to be in a non-realistic monthly overhead situation as well. He forged signatures for loans and sent fraudulent A/R numbers to banks in order to gain access to more money than we should have been able to receive. These actions resulted in significant financial losses.

The embezzlement created substantial cash flow disruption and caused the company to fall behind on financial obligations that it otherwise would have been able to meet. Because these losses were not immediately visible in full scope, the financial damage collected over time, affecting the company's ability to maintain normal operations and financial stability.

As the situation became clear, it became evident that the company had suffered serious financial harm directly resulting from the former partner's misconduct. These losses weakened the company's financial position drastically and ultimately made it necessary to seek protection under Chapter 11 Bankruptcy in order to stabilize operations and reorganize responsibly.

The bankruptcy filing was not the result of lack of work, lack of demand, or operational failure, but rather the direct financial impact of unauthorized and improper actions by our former partner.

## 2(d)   Steps Already Taken to Make It Better

Since discovering the misconduct and resulting financial issues, I have taken significant steps to stabilize the company and protect its future.

4

These steps include:

- Removing the former partner from any involvement with the company
- Implementing stricter financial controls and oversight procedures through myself and Jon
- Personally overseeing financial management and monitoring of company accounts
- Working to stabilize operations and maintain ongoing business activity
- Communicating with the companies we owe money to in good faith
- Filing for Chapter 11 bankruptcy protection in order to reorganize the business

## 2(e)   Steps Still Need to Be Taken

The Chapter 11 process will allow the company to complete the restructuring necessary to restore financial stability.

The steps that still need to be taken include:

- Continuing operations while reorganizing the company's financial obligations
- Working on cutting any and all unnecessary overhead in which we have done a lot of already
- Working with legal counsel and the court to develop and implement a reorganization plan
- Addressing creditor claims through the bankruptcy process
- Maintaining strict financial controls and oversight as we move forward
- Rebuilding working capital and restoring the company's financial position
- Continuing to operate responsibly and profitably going forward
- Looking at true profits through each job and minimize any mistakes or missed items within a job that cost the job money

The goal of these steps is to allow the company to stabilize financially, honor its obligations to the extent possible, and continue operating as a productive business.

We remain fully committed to operating the business responsibly, complying with all legal requirements, and ensuring its long-term viability.

**III. Liquidation Analysis**

To confirm the plan, the Court may find that each holder of a claim or interest will receive or retain under the Plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if Debtor were liquidated under chapter 7 of the Bankruptcy Code on such date.  Debtors have attached a liquidation analysis as Exhibit 1.  Because of the secured claim of F&M Trust

consuming all of the value of the Debtor's equipment, inventory and accounts receivable, in a liquidation general, unsecured creditors as well as priority unsecured creditors would receive zero dollars. Confirmation of this Plan is not likely to be followed by the liquidation of assets, or the need for further financial reorganization, as the Debtor will continue to operate and pay its creditors from profit received through operations.

### IV. Income Projections

To confirm the plan, the court must find that Debtors will be able to make all payments under the plan. Debtors attaches as Exhibit 2 projected financial information regarding net income to be received by Debtor that is not reasonably necessary to be expended for the continuation, preservation, or operation of the business. The average monthly projected net income determined by the projected financial information to be available for a Plan payment is $5,700.00.

**YOU SHOULD CONSULT WITH YOUR ACCOUNTANT OR OTHER FINANCIAL ADVISOR IF YOU HAVE ANY QUESTIONS PERTAINING TO THESE PROJECTIONS.**

### Article 1: Summary

Debtors propose this Plan of Reorganization ("Plan") under Subchapter V of Title 11 of the United States Bankruptcy Code ("Code") in compliance with the applicable provisions of the Code, in good faith and not by any means forbidden by law. The Plan proposes to pay creditors of Debtors from the income and shall submit such income necessary for the performance of the Plan over a three (3) year period.

6

Debtor has classified all claims and interests in accordance with §§1122, 1123, and 1190 of the Code. The Plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under the Plan.

This Plan provides for:
1 class(es )of administrative expenses;

1 class(es) of priority tax claims;

1 class(es )of secured claims;

1 class(es) of non-priority general unsecured claims; and

1 class(es) of equity security holders.

Non-priority unsecured creditors holding allowed claims will receive distributions which are not less than such holder would receive if Debtor were liquidated under Chapter 7 of the Code and is valued at approximately 10 cents on the dollar. This is merely an approximation. The Debtors propose to pay $5,700.00 per month into the Plan. A payment will be made directly to F&M Trust every month in the amount provided for in the Debtor's budget in addition to the Plan payment. The Priority tax claims will be paid through the Plan along with approved fees to CGA Law Firm counsel for the Debtor. The funds remaining thereafter will be paid to all general, unsecured claim holders pro rata.

**All creditors and equity security holders should refer to Articles 3 through 6 of this Plan for information regarding the precise treatment of their claims or interests.**

**YOUR RIGHTS MAY BE AFFECTED. YOU SHOULD READ THESE PAPERS CAREFULLY AND DISCUSS THEM WITH YOUR ATTORNEY, IF YOU HAVE ONE. IF YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE.**

**Article 2: Classification of Claims and Interests**

**2.01 Class 1:** All allowed claims entitled to priority under §507(a) of the Bankruptcy Code, except administrative expense claims under §507(a)(2) and priority tax claims under §507(a)(8) of the Code: CGA Law Firm legal fees and expenses.

While there are administrative expense claims and priority tax claims, there are no other creditors entitled to priority under §507(a) of the Bankruptcy Code. If the class accepts the Plan, each holder will receive deferred cash payments of a value as of the effective date of the Plan or the date on which such claim is allowed, whichever is later. If the class does not accept the Plan, each holder will receive cash on the effective date of the Plan or the date on which such claim is allowed, whichever is later, equal to the allowed amount of the claim.

**2.02 Class 2:** All allowed claims entitled to priority under §506 and §507(a)(8) of the Bankruptcy Code. The holder of the first claim in this classification is the Internal Revenue Service which is owed approximately Six Thousand Sixty Two ($6,062.23) dollars and twenty three cents is for the tax year 2025. The holder of the second claim in this classification is the Pennsylvania Department of Revenue which is owed approximately One Hundred and Fifty Eight ($158.22) dollars and twenty two cents for tax year 2025.

**2.03 Class 3:** All allowed secured claim under §506 of the Bankruptcy Code.

| Class | Creditor | Collateral | Amount |
|-------|----------|------------|--------|
| 3a | F&M Trust | All business assets. | $100,000.00 |

8

The holder of the secured claim on assets being retained by the Debtors will retain the liens securing such claims to the extent of the allowed amount of such claims.

**2.04 Class 4:** All non-priority unsecured claims allowed under §502 of the Bankruptcy Code.

| Class | Creditor | Amount |
|---|---|---|
| **4a** | 1 North Main | $40,000.00 |
| **4b** | Middletown Valley Bank | $747,848.00 |
| **4c** | F&M Trust | $206,260.56 |
| **4d** | ABC  Supply Company | $112,868.78 |
| **4e** | American Express 1008 | $170,378.27 |
| **4f** | American Express 2007 | $3,216.80 |
| **4g** | American Express 1009 | $5,574.75 |
| **4h** | Boyer & Ritter LLC | $10,000.00 |
| **4i** | JPMorgan Chase | $48,377.84 |
| **4j** | Cumberland Supply LLC | $84,000.00 |
| **4k** | McCune Lumber Company | $19,539.41 |
| **4l** | Messick's | $2,262.00 |
| **4m** | Nick's Plumbing | $25,665.00 |
| **4n** | Sunbelt  Rentals | $914.91 |
| **4o** | National Funding | $119,166.52 |
| **4p** | Pawnee Leasing Corp | $22,588.33 |

9

**2.05 Class 5:** Equity interests of Debtor to retain interest in the Debtor:

Jacob Plank, 50% owner

Jonathan Nalewak, 50% owner

**Article 3: Treatment of Administrative Expense Claims, Priority Tax Claims, and Fees**

**3.01 Unclassified claims:** Certain types of claims are automatically entitled to specific treatment under the Code. Claims of a kind specified in §§507(a)(2), 507(a)(3), or 507(a)(8) of the Code and classes of interest are not designated into classes.

**3.02 Administrative expense claims:** Each holder of an administrative expense priority claim, as defined in §503 of the Code and allowed under §507(a)(2) of the Code on the effective date of the Plan, will receive on account of such claim cash equal to the allowed amount of the claim, or upon such other terms as may be agreed upon by the holder of the claim and Debtors or as ordered by the Court.

Debtors will be responsible for payment of the following Administrative expense claims:

a. The Subchapter V Trustee shall be awarded reasonable compensation for actual, necessary services rendered by the Trustee and reimbursement for actual, necessary expenses after notice to the parties in interest and the United States Trustee and a hearing as set forth in §330 of the Code.

b. Debtor's attorneys' fees and other professional fees shall be paid in full upon application to the Bankruptcy Court for approval of fees and expenses claimed to be incurred after notice and hearing as set forth in §330 of the Code.

**3.03 Priority tax claims:** Each holder of a priority tax claim under §507(a)(8) of the Code, will receive on account of such claim payment as set forth in this subsection. The Commonwealth of Pennsylvania is owed $158.22. This will be paid within the first

10

ninety (90) days following Confirmation as a de minimis claim to remove it from further

payment.  The payment of the Internal Revenue Service will be paid over a period of not

later than three (3) years from the date of the Order from relief, and in a manner not less

favorable than the most favored non-priority unsecured claim provided for by the Plan.

| Class 2-Priority Claims<br>    Commonwealth of Pennsylvania | $158.22 | To be paid within ninety (90) days of Confirmation. |
|---|---|---|
| Class 2-Priority Claims<br>    Internal Revenue Service | $6,062.23 | Paid as Priority amount before payment to general, unsecured creditors. |

**3.04 Quarterly fees:** Pursuant to 28 U.S.C. §1930(a)(6), Debtor is exempt from quarterly

fees as this is a case under subchapter V of chapter 11.

### Article 4: Treatment of Claims and Interests Under the Plan

**4.01** Claims and interests shall be treated as follows under this Plan:

| Class 1- Administrative expense claims<br>    CGA Law Firm, legal fees | Unimpaired | To be paid in full. |
|---|---|---|
| Class 2-Priority Claims<br>    Commonwealth of Pennsylvania | Impaired | To be paid within ninety (90) days of Confirmation. |
| Class 2-Priority Claims<br>    Internal Revenue Service | Impaired | Paid as Priority amount before payment to general, unsecured creditors, but paid contemporaneously with payment to the secured claim in Class 3. |
| Class 3-Secured Claim of<br>    F&M Trust | Impaired | Security in all business assets.  Allowed Secured claim off F&M Trust in the amount of $100,000.00 will be paid at three year amortization, 6.5% interest payments of $1,956.61 monthly. |
| Class 4-Non-priority unsecured claims | Impaired | A pro rata distribution of the monthly payments to be made under the Plan over a thirty six (36) month period.  While it is estimated that this is approximately 10% of the total claims, a 10% distribution is not guaranteed. |
| Class 5-Equity security holders | Unimpaired | Equity security holders shall retain their interests in Debtor and continue to serve after confirmation of the Plan as directors, officers, or voting trustees of Debtor. Their compensation shall remain the same, with |

| | | the exception of cost-of-living adjustments, until such time as Debtor's Plan is paid in full. |
|---|---|---|

## Article 5: Allowance and Disallowance of Claims

**5.01 Disputed claim:** A "disputed claim" is a claim that has not been allowed or disallowed, and as to which either (i) a proof of claim has been filed or deemed filed, and Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and Debtor has scheduled such claim as disputed, contingent, or unliquidated.

**5.02 Delay of distribution on a disputed claim:** No distribution will be made on account of a disputed claim unless such claim is allowed.

**5.03 Settlement of disputed claims:** Debtor will have the authority to settle and compromise disputed claims with court approval and compliance with Federal Rules of Bankruptcy Procedure 9019.

## Article 6: Provisions for Executory Contracts and Unexpired Leases

**6.01 Assumed executory contracts and unexpired leases:**

Debtor assumes the following executory contracts and unexpired leases as of the effective date of the Plan:  None.

**6.02 Rejected executory contracts and unexpired leases:**

Debtor rejects the following executory contracts and unexpired leases as of the effective date of the Plan:  None.

## Article 7: Means for Implementation of the Plan

Debtor intends to continue doing business  and utilize such business income as is necessary to conduct business and make Plan payments as provided herein.

12

**Article 8: General provisions**

**8.01 Definitions and rules of construction:** The definitions and rules of construction set forth in the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following:

**8.02 Effective date:** The Effective Date ("Effective Date") of this Plan is the first business day following the date that is fourteen (14) days after the entry of the confirmation order. If, however, a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the date on which the stay expires or is otherwise terminated.

**8.03 Severability:** If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

**8.04 Binding effect:** The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the heirs, successors, or assigns of such entity whether or not the claim of such entity is impaired under the Plan and whether or not the entity has accepted the Plan.

**8.05 Captions:** The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

**8.06 Controlling effect:** Unless a rule of law or procedure, including the Code or the Federal Rules of Bankruptcy Procedure, is supplied by federal law, the laws of the

13

Commonwealth of Pennsylvania govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided.

**8.07 Corporate governance:** Not applicable.

**8.08 Alternative Provisions:** If Debtors fail to fulfill any obligation under this Plan, Debtors may modify the Plan to cure any default.

**8.09 Retention of jurisdiction:** The Bankruptcy Court shall retain jurisdiction with regard to the following:

(i) to make such orders as are necessary or appropriate to implement the provisions of this Plan and to resolve any disputes arising from implementation of the Plan;

(ii) to rule on any modification of the Plan proposed under §1193;

(iii) to hear and allow all applications for compensation to professionals and other Administrative Expenses;

(iv) to resolve all issues regarding Claims objections, and issues arising from assumption/rejection of executory contracts and unexpired leases;

(v) to adjudicate any cause of action which may exist in favor of Debtors, including preference and fraudulent transfer causes of action;

(vi) to direct Debtors and any other necessary party to execute or deliver or to join in the execution or delivery of any instrument required to affect a transfer of property dealt with by the confirmed Plan;

(vii) to correct any defect, cure any omission, or reconcile any inconsistency in this Plan or confirmation order; and

14

(viii) to perform any other act, including the satisfaction of any lien, that is necessary for the consummation of the Plan.

**Article 9: Discharge and Plan Payments**

If Debtors' plan is confirmed under §1191(a), on the effective date of the Plan, Debtors will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in §1141(d)(1)(A) of the Code, except that Debtors will not be discharged of any debt (i) imposed by this Plan; or (ii) to the extent provided in §1141(d)(6). The Debtors shall make payments under the Plan.

If Debtors' Plan is confirmed under §1191(b), confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the first three (3) years of this Plan, or as otherwise provided in §1192 of the Code. Debtors will not be discharged from any debt (i) on which the last payment is due after the first three (3) years of the Plan, or as otherwise provided in §1192; or (ii) excepted from discharge under §523(a) of the Code, except as provided in Federal Rule of Bankruptcy Procedure 4007(c). The Trustee shall make payments to creditors under the Plan.

**Article 10: Other provisions:**

**Retained Jurisdiction and Enforcement Remedies for Tax Claimants: Notwithstanding anything in this plan to the contrary, the Bankruptcy Court shall not retain jurisdiction with respect to tax claims except for (i) resolving the amount any tax claims arising prior to confirmation, and (ii) enforcing the discharge provisions of the**

15

**confirmed plan. A failure by the reorganized debtor to make a payment to holders of tax claims pursuant to the terms of the plan shall be an event of default. If the reorganized debtor fails to cure an event of default as to Plan payments on the tax claims within thirty days after receipt of written notice of default from a tax claimant, then the tax claimant may (a) enforce the entire amount of its claim immediately and without further approval or release from the Court; (b) exercise any and all rights and remedies such tax claimant may have under applicable non-bankruptcy law; and/or (c) seek such relief as may be appropriate in this Court.**

**10.01 Vesting:** Except as provided in this Plan or the order confirming the Plan, the confirmation of the Plan vests all of the property of the estate, tangible and intangible, in Debtor as of the Effective Date free and clear of any claims or interests provided for by this Plan. Except as otherwise provided for in this Plan, Debtor shall remain in possession of all property of the estate.

### Article 11: Default:

**11.01 Default:** In the event that any creditor, or the Office of the United States Trustee or the Sub V Trustee, believes that the Debtors have a default under the Plan payment called for under this Plan, this Court shall retain jurisdiction to adjudicate whether or not a default has occurred.

16

Any party alleging a default must give the debtors and counsel ten (10) days written notice of the default and of the act or payment that is required to cure the default.  Notice of any default must be served by email and U.S. mail 2 day delivery service to insure prompt delivery and must be served at the following:

- CGA Law Firm
  Attorney Lawrence V. Young, Esquire
  135 N. George St.
  York, PA 17401
  Email address:        lyoung@cgalaw.com

- Precisions Trades & Services, LLC
  Jacob Plank
  993 Heritage Drive
  Gettysburg, PA  17325
  Email address:        jacob.plank@precisiontradesllc.com

Respectfully submitted,

CGA Law Firm

/s/Lawrence V. Young

Lawrence V.  Young, Esquire
Attorney for Debtors
135 N. George St.
York, PA 17401
717-848-4900
lyoung@cgalaw.com

/s/Jacob Plank

Precision Trades & Services, LLC
Jacob Plank, Managing Member
             in his Corporate Capacity

17

# <u>Exhibit 1</u>

## Liquidation Analysis

| Asset | Gross Value | Secured Debt | Cost to Sell | Net |
|---|---|---|---|---|
| Cash and Financial Accounts | $37,665.47 | $100,000 | - | $0 |
| 2015 GMC 2500 HD | $24,600 | $40,235 | - | $0 |
| 2022 Carmate enclosed trailer | $8,000 | $9,800 | - | $0 |
| 2022 Boise Dump Trailers (2) | $14,400 | $28,473 | - | $0 |
| Internet domain names | $0 | $0 | - | $0 |
| Contractor Licenses | $0 | $0 | - | $0 |
| Accounts Receivable | $38,057.14 | $100,000 | - | $0 |

1

# Exhibit 2

**Precision Trades & Services, LLC.**

April 2026 - March 2027

| Distribution account | Apr-26 | May-26 | June-26 | July-26 | August-26 | Sept-26 | October-26 | November-26 | December-26 | Jan-27 | Feb-27 | March-27 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Income | | | | | | | | | | | | |
| Total for Income | 285,000.00 | 300,000.00 | 325,000.00 | 325,000.00 | 325,000.00 | 300,000.00 | 280,000.00 | 255,000.00 | 250,000.00 | 245,000.00 | 250,000.00 | 250,000.00 |
| Cost of Goods Sold | | | | | | | | | | | | |
| Total for Subcontractor & Labor Expense - COGS | 151,000.00 | 162,500.00 | 174,000.00 | 174,000 | 174,000.00 | 162,500.00 | 151,000.00 | 139,500.00 | 135,750.00 | 133,750.00 | 135,750.00 | 135,750.00 |
| Total for Supplies & Materials - COGS | 80,000.00 | 90,000.00 | 95,000.00 | 95,000.00 | 95,000.00 | 90,000.00 | 80,000.00 | 70,000.00 | 65,000.00 | 65,000.00 | 65,000.00 | 65,000.00 |
| Total for Cost of Goods Sold | 231,000.00 | 252,500.00 | 269,000.00 | 269,000.00 | 269,000.00 | 252,500.00 | 231,000.00 | 209,500.00 | 200,750.00 | 198,750.00 | 200,750.00 | 200,750.00 |
| Gross Profit | 54,000.00 | 47,500.00 | 56,000.00 | 56,000.00 | 56,000.00 | 47,500.00 | 49,000.00 | 45,500.00 | 49,250.00 | 46,250 | 49,250.00 | 49,250.00 |
| Expenses | | | | | | | | | | | | |
| Total for General business expenses | 9,110.56 | 5,810.56 | 5,810.56 | 5,810.56 | 5,810.56 | 5,810.56 | 5,810.56 | 5,560.56 | 6,360.56 | 5,810.56 | 5,560.56 | 5,560.56 |
| Total for Insurance | 7,607.91 | 7,607.91 | 7,607.91 | 8,841.00 | 8,841.00 | 8,841.00 | 8,841.00 | 8,841.00 | 8,841.00 | 8,841.00 | 8,841.00 | 8,841.00 |
| Interest paid | | | | | | | | | | | | |
| F&M Trust payment | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 |
| Total for Legal & accounting services | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 |
| Total for Office expenses | 4,536.78 | 4,536.78 | 4,536.78 | 4,686.78 | 4,686.78 | 4,536.78 | 4,536.78 | 4,536.78 | 4,536.78 | 4,536.78 | 4,536.78 | 4,536.78 |
| Payroll Expenses | | | | | | | | | | | | |
| Total for Payroll Expenses | 16,655.00 | 16,655.00 | 16,655.00 | 16,655.00 | 16,655.00 | 16,655.00 | 16,655.00 | 16,655.00 | 16,655.00 | 16,655.00 | 16,655.00 | 16,655.00 |
| Rent | | | | | | | | | | | | |
| Total for Rent | 907.00 | 907.00 | 907.00 | 907 | 907 | 907 | 907 | 907 | 907 | 907 | 907 | 907 |
| Supplies | | | | | | | | | | | | |
| Total for Supplies | 0.00 | 0.00 | 0.00 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Total for Travel | 1,300.00 | 0.00 | 1,300.00 | 0 | 1,300.00 | 0 | 1,300.00 | 0 | 1,300.00 | 0 | 0 | 1,300.00 |
| Utilities | | | | | | | | | | | | |
| Total for Utilities | 1,430.03 | 1,430.03 | 1,430.03 | 1,430.03 | 1,430.03 | 1,430.03 | 1,430.03 | 1,430.03 | 1,430.03 | 1,430.03 | 1,430.03 | 1,430.03 |
| Vehicle expenses | | | | | | | | | | | | |
| Total for Vehicle expenses | 2,550.00 | 2,600.00 | 4,900.00 | 3,100.00 | 3,100.00 | 2,600.00 | 3,500.00 | 2,300.00 | 2,300.00 | 3,050.00 | 2,600.00 | 2,600.00 |
| Total for Expenses | 276,097.28 | 294,947.26 | 315,247.28 | 311,530.37 | 312,630.37 | 294,180.37 | 274,680.37 | 250,630.37 | 244,180.37 | 240,860.37 | 242,380.37 | 243,680.37 |
| Net Operating Income | 6,902.72 | 5,052.72 | 9,752.72 | 13,469.63 | 12,169.63 | 5,819.63 | 5,119.63 | 4,169.63 | 5,819.63 | 4,119.63 | 7,819.63 | 8,319.63 |